William **OWEN** III, Plaintiff,

v.

**CROP HAIL MANAGEMENT**, Defendant.

No. 92–0545–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Jan. 18, 1994.

---

Dennis A. Rolf, Concordia, MO, for plaintiff.

Michael Steele, Sherman, Taff, Kansas City, MO, for defendant.

## ORDER

WHIPPLE, District Judge.

The court, on September 22, 1992, referred the present case to Magistrate Robert Larsen. Judge Larsen asks this court to review its August 11, 1992 summary denial of plaintiff's Motion to Remand the case to state court. The court agrees that the Motion to Remand deserves more discussion and therefore amends its August 11, 1992 decision. The court will deny the Motion to Remand for the reasons stated below.

## I. Background

Plaintiff William Owen III farms in Lafayette County, Missouri. Defendant Crop Hail Management is a Montana corporation which sells and services multiple peril crop insurance. Crop Hail Management's program is offered under a Standard Reinsurance Agreement between the Western National Mutual Insurance Company and the United States Department of Agriculture, Federal Crop Insurance Corporation (FCIC). Crop Hail Management serves as an agent for Western National Mutual Insurance Company and offers the multiple peril crop insurance policies that the FCIC reinsures.

In 1991, Owen applied for a multiple peril crop insurance policy with Crop Hail Management to cover Owen's corn and soybean crops for that year. Crop Hail Management issued and the FCIC reinsured the policy. Owen filed a claim for soybean losses after the harvest of his soybean crop, but Crop Hail Management denied the claim.

Owen filed a complaint against Crop Hail Management in the Associate Circuit Court of Lafayette County, Missouri, on May 22, 1992. Owen alleged that Crop Hail Management's refusal to pay him for losses under the insurance policy was vexatious therefore entitling Owen to punitive damages and reasonable attorney fees as well as compensatory damages. The dispute involves the interpretation of the insurance policy between Owen and Crop Hail Management. Crop Hail Management removed the case to this court on June 19, 1992, asserting subject matter jurisdiction under both federal question, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. Crop Hail Management now concedes the court does not have diversity jurisdiction, but still asserts that a federal question exists. Owen asks this court to remand the case to state court.

## II. Motion to Remand

### A. Well–Pleaded Complaint Rule

If Owen could not originally file this case in federal court, then this court must remand the case to state court. 28 U.S.C. §§ 1441(a) & 1447(c). *See also, Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425,

2429, 96 L.Ed.2d 318 (1987) ("Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). The court does not have diversity or supplemental jurisdiction over this case, 28 U.S.C.A. §§ 1332 & 1367, but this court does have federal question jurisdiction over cases originally filed in this court which involve the Federal Crop Insurance Act. 28 U.S.C. § 1331.

 Crop Hail Management argues that the Federal Crop Insurance Act, 7 U.S.C. §§ 1501–1520, (the Act) preempts Owen's state law claims thus, Crop Hail Management is using the Act as a defense to Owen's claims. Such a tactic usually violates the well-pleaded complaint rule. The well-pleaded complaint rule requires plaintiff to raise a federal question in the complaint. When a defendant raises a federal question "[a]s a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). A defense or anticipatory defense raising a federal question violates the well-pleaded complaint rule and thus, federal question jurisdiction is usually improper. *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 128, 94 S.Ct. 1002, 1004, 39 L.Ed.2d 209 (1974). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429.

One corollary to the well-pleaded complaint rule, however, is complete preemption. The United States Supreme Court holds that where a federal statute so extensively regulates an area that it does not leave any room for state law to supplement it, a defendant may properly remove a case from state court even though the federal question is raised as a defense. *Id.* at 393–99, 107 S.Ct. at 2430–33 (collective bargaining contracts, but not individual employment contracts under the Labor Management Relations Act); *Metropolitan Life,* 481 U.S. at 67, 107 S.Ct. at 1548 (issues under § 502(a) of the Employee Retirement Income Security Act). *See also, Wisconsin Public Intervenor v. Mortier,* ——

U.S. ——, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532, 542–43 (1991) (The Court defined complete preemption as regulating an area so pervasively that "Congress left no room for the States to supplement it.").

Various forms of preemption exist, but to meet the corollary to the well-pleaded complaint rule, the Act must completely preempt state law so that it occupies the entire field of regulation rather than simply preempting inconsistent state law. *Mortier,* —— U.S. at ——, 111 S.Ct. at 2482, 115 L.Ed.2d at 543 ("Even when Congress has not chosen to occupy a particular field, pre-emption may occur to the extent that state and federal law actually conflict."). Unless the Act completely preempts state law thereby meeting the corollary to the well-pleaded complaint rule, the court will not have federal question jurisdiction over this case and must remand it to the Associate Circuit Court of Lafayette County, Missouri. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). *See also, Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991) ("Federal courts are courts of limited jurisdiction and the 'threshold requirement in every federal case is jurisdiction.'") (citation omitted).

If the Act completely preempts state law then this court retains jurisdiction, but if not, the court must remand the case. Neither the United States Supreme Court nor the Eighth Circuit address the issue of whether the Act completely preempts state law, but both provide this court with some guidance.

### B. Complete Preemption

The United States Supreme Court holds that this court must look to the intent of Congress in determining if the federal scheme so completely preempts state law to allow Crop Hail Management to remove the case. *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547–48. Specifically, the court must determine if "Congress has clearly manifested an intent to make causes of action ... removable to federal court." *Id.* The Eighth Circuit holds that courts must also determine if the federal scheme provides a civil enforcement provision under which a plaintiff can assert an action and must look to

the history and purpose of the statute in determining if the federal scheme completely preempts state law. *Deford v. Soo Line R.R. Co.*, 867 F.2d 1080, 1086 (8th Cir.), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

The United States Supreme Court has found complete preemption in only three areas: the Labor Management Relations Act, the Employee Retirement Income Security Act and some areas of American–Indian affairs. *Caterpillar*, 482 U.S. at 393–99, 107 S.Ct. at 2430–33 (collective bargaining contracts, but not individual employment contracts under the Labor Management Relations Act); *Metropolitan Life*, 481 U.S. at 67, 107 S.Ct. at 1548 (issues under § 502(a) of the Employee Retirement Income Security Act); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 675, 94 S.Ct. 772, 781, 39 L.Ed.2d 73 (1974) (possession of Indian tribal lands). The Eighth Circuit expands the list of federal schemes that completely preempt state laws only slightly.[1] At best then, the complete preemption standard is a difficult one to meet. Indeed, two Justices of the United States Supreme Court caution that:

> our decision should not be interpreted as adopting a broad rule that any defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court.*" In future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court.

*Metropolitan Life*, 481 U.S. at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring) (alteration in original) (citation omitted).

## C. The Act Completely Preempts State Law

■ Reading the United States Supreme Court and the Eighth Circuit cases

together, this court will apply the following three-part test to determine whether the Act completely preempts state law: (1) whether complete preemption is consistent with the history and purpose of the Act; (2) whether Congress clearly manifested an intent to make the Act removable to federal court and (3) whether the federal scheme provides a civil enforcement provision under which a plaintiff can assert an action. Given this test, the Act does completely preempt state law and defendant permissibly removed this case.

### 1. History or Purpose of the Act

Crop insurance was largely unavailable before Congress passed the Act because private insurance companies determined that issuing multiple peril crop insurance posed too much risk for them. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383 n. 1, 68 S.Ct. 1, 3 n. 1, 92 L.Ed. 10 (1947). To remedy the problem, Congress, in 1938, passed the Federal Crop Insurance Act in which it created the FCIC to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance." 7 U.S.C. § 1502. The Act remained largely a pilot program for its first forty-two years until 1980 when Congress allowed the FCIC to expand the crop insurance program to all counties and crops. H.R.Rep. No. 430, 96th Cong., 2d Sess. 10 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 3068, 3072.

The FCIC provides crop insurance to farmers in three ways. The FCIC sells insurance through private insurance agents, it reinsures private insurance companies who provide crop insurance and it directly provides crop insurance to farmers. 7 U.S.C. §§ 1507 & 1508. The FCIC largely relies on private insurance companies rather than directly issuing a policy to farmers. 7 U.S.C. § 1508(h). *See also*, H.R.Rep. No. 430, 96th Cong., 2d Sess. 14–15 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 3068,

---

**1.** The Eighth Circuit also holds that the Railway Labor Act, 45 U.S.C. §§ 151–188, the Interstate Commerce Act, 49 U.S.C. §§ 10101–11917, and section 86 of the National Bank Act completely

preempt state law. *M. Nahas & Co. v. First Nat. Bank*, 930 F.2d 608 (8th Cir.1991) (National Bank Act); *Deford*, 867 F.2d at 1080 (Railway Labor Act and Interstate Commerce Act).

3077 ("A serious effort must be made by FCIC to involve private industry in the Federal crop insurance program. The burden of negotiating an arrangement using reinsurance of private companies, to the maximum extent practicable, rests with FCIC...."). The FCIC also subsidizes the premiums for all insurance policies and establishes the terms for the insurance policies. 7 U.S.C. § 1508. All insurance policies are subject to the Act and the regulations of the FCIC.

The FCIC's efforts to deliver uniform crop insurance began to unravel after the 1980 expansion of the crop insurance program. Various states attempted to require changes in the federally approved insurance policies to reflect state law. States also attempted to impose taxes and to issue punitive damages against insurance companies who instead of following state law, followed the Act or the regulations of the FCIC. 55 Fed.Reg. 23066, 23066–67 (1990). The FCIC must reimburse the insurance companies it reinsures for their expenses so when the states taxed the insurance companies, the FCIC was in effect paying taxes for which it is exempt. *See,* 7 U.S.C. §§ 1508(h) (reinsurance) & 1511 (tax exemption). In one year alone, the FCIC paid over $15 million for taxes it should have not had to pay. Further, indemnities did not reach their intended beneficiaries because of garnishments, liens and attachments even though the Act prohibits levies on indemnities. 55 Fed.Reg. 23066, 23066–67 (1990). *See also,* 7 U.S.C. § 1509 (exemption of indemnities from levy).

As the court will discuss later, the FCIC responded to these problems by issuing regulations that completely preempt all state laws. 55 Fed.Reg. 23066, 23066–67 (1990). Given the history and purpose of the Act to provide uniform crop insurance to as many participants as possible by using the private sector to the maximum extent practicable, the FCIC's regulations reasonably respond to obstacles from the various states.

### 2. Congressional Intent

In determining whether Congress intended the Act to completely preempt state law, the court will look to the express language of the Act, the legislative history of the Act and the FCIC's interpretation of the Act. If either the language, history or the FCIC's interpretation indicates Congress intended to completely preempt state law then the second part of the complete preemption test will be satisfied.

The express language of the Act does not unambiguously demonstrate that Congress intended the Act to completely preempt state law. The two sections in the Act that are relevant to the preemption discussion are sections 1506(d) and 1506(k) of title seven, United States Code. Section 1506(d) states in part:

> The district courts of the United States ... shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation. The Corporation may intervene in any court in any suit, action, or proceeding in which it has an interest. Any suit against the Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business.[2]

This section applies only to cases in which the FCIC is a party. Owen does not allege any wrongdoing on the part of the FCIC and the FCIC is not a party to this case thus, § 1506(d) does not apply to this case. Nothing in § 1506(d) requires Owen to sue an insurance company such as Crop Hail Management in federal court—even if the FCIC reinsures the insurance company.

The legislative history also indicates that § 1506(d) does not apply to cases where the FCIC is not a party. The original 1938 legislation stated that the FCIC could "sue and be sued in its corporate name in any court of competent jurisdiction, State or Federal." Federal Crop Insurance Act, ch. 30, § 506(d), 52 Stat. 73 (1938). Subsequent amendments did little to change the effect of the 1938 wording until 1980. *See e.g.,* Federal Crop Insurance Act, ch. 440, § 7, 61 Stat. 719 (1947). The 1980 amendment gave fed-

---

**2.** The reference in the statute to the "Corporation" is simply another name for the "Federal Crop Insurance Corporation" or the "FCIC."

eral courts exclusive jurisdiction over cases in which the FCIC is a party. *See,* 7 U.S.C. § 1506(d). One interpretation of the legislative history then.is that Congress knew how to create exclusive federal jurisdiction, but it did so only for suits involving the FCIC and not for suits between an insured and a private insurance company. *Cf. Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) ("Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly."). At no time during the Act's existence did Congress address the jurisdiction of a suit where as in the present case, the plaintiff is suing an insurance company which issued a policy reinsured by the FCIC.

The next relevant portion of the Act specifically addresses the preemption issue:

> The Corporation may enter into and carry out contracts or agreements necessary in the conduct of its business, as determined by the Board. State and local laws or rules shall not apply to contracts or agreements of the Corporation or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts or agreements.

7 U.S.C. § 1506(k). Section 1506(k) by its terms preempts state laws inconsistent with a contract between the FCIC and another party. In the present case, however, the dispute concerns the construction of a contract between Owen and Crop Hail Management and not one in which the FCIC is a party thus, one construction of § 1506(k) is that it does not apply to the present case. Additionally, the language of § 1506(k) suggests state laws may coexist with the Act to the extent they fills gaps in the Act. A literal reading of the section together with the rest of the Act reveals no express congressional intent to completely preempt state law. Similarly, a review of the legislative history of § 1506(k) does not uncover an express congressional intent to convert state

law claims against insurance companies into federal claims.

Without examining the FCIC's interpretation of the Act, the court would interpret the Act as failing to completely preempt state law and reach the same result as the Ninth Circuit. There, plaintiffs originally filed in state court, but because the state court held that the Act established exclusive jurisdiction in the federal courts, they refiled in federal court. *Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 667 (9th Cir.1993). The district court dismissed the case holding that the Act does not completely preempt state law and the Ninth Circuit affirmed. *Id.* at 668. On appeal, the Ninth Circuit looked only to whether Congress expressly stated in the Act or in the Act's legislative history its intention to completely preempt state law. The *Holman* court did not look to the other factors the Eighth Circuit examines such as the history and purpose of the Act. Further, in examining the congressional intent, the *Holman* court did not examine the FCIC's interpretation of the Act. *Id.* at 668–69.

■ This court cannot agree with the Ninth Circuit's analysis. Not only does the Ninth Circuit's analysis ignore some of the factors the Eighth Circuit holds are relevant, but also congressional intent does not manifest solely in "express congressional authorization to displace state law." *New York v. FCC,* 486 U.S. 57, 64, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). The court must examine more than just the statutory language and the legislative history in determining the congressional intent. The court must also examine the FCIC's interpretation of the statute through its regulations. *Louisiana Public Serv. Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986) ("Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may preempt state regulation.").

The regulations reproduced in the margin demonstrate the FCIC's intent to completely preempt state law.[3] The FCIC interprets

---

3. Subpart P—Preemption of State Laws and Regulations

7 C.F.R. § 400.351 Basis and applicability.

§ 1506(k) "to allow FCIC to preempt any state insurance rules or regulations regarding crop insurance that may apply to FCIC *or to any insurance company with which FCIC has an agreement.*" 55 Fed.Reg. 23066, 23067 (1990) (emphasis added). It rejects the interpretation that Congress intended to give the FCIC only the power to preempt inconsistent state laws that directly affect a contract to which the FCIC is a party. *Id.* While the FCIC does intend to completely preempt state law, the court must next determine if the FCIC acted within its authority when it did so.

The United States Supreme Court explains the standard this court must apply in reviewing an agency's construction of a statute:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Even though Congress did not expressly state an intent to complete preempt state law, apparently Congress did give the FCIC the power to do so. As discussed earlier, the purpose of the Act is to provide uniform crop insurance to as many participants as possible by using the private sector to the maximum extent practicable. Congress created the

The regulations contained in this subpart are issued pursuant to the Federal Crop Insurance Act, as amended (7 U.S.C. 1506 et seq.) (the Act), to prescribe the procedures for federal preemption of State laws and regulations not consistent with the purpose, intent, or authority of the Act. These regulations are applicable to all policies of insurance, insured or reinsured by the Corporation, contracts, agreements, or actions authorized by the Act and entered into or issued by FCIC.

7 C.F.R. § 400.351 State and local laws and regulations preempted.

(a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.

(b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:

(1) Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations;

(2) Tax premiums associated with policies issued hereunder;

(3) Exercise approval authority over policies issued;

(4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (nothing herein is intended to preclude any action on the part of any authorized State regulatory body or any State court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation); or

(5) Assess any tax, fee, or amount for the funding or maintenance of any State or local insolvency pool or other similar fund.

The preceding list does not limit the scope or meaning of paragraph (a) of this section.

FCIC to carry out the Act's purpose, 7 U.S.C. § 1503, and Congress gave the FCIC the power to adopt regulations "governing the manner in which its business may be conducted and the powers granted to it by law may be exercised and enjoyed." 7 U.S.C. § 1506(e). The FCIC states its interpretation of § 1506(k) is necessary because, to "carry out its Congressional mandate to establish crop insurance uniformly throughout the United States, FCIC has to have the authority to control not only the contractual relationship with its contractors, but it also must control the relationship such contractors have with the insureds." 55 Fed.Reg. 23066, 23067–68 (1990). Given the history of states imposing obstacles to the establishment of uniform crop insurance, the FCIC's interpretation of § 1506(k) as giving the FCIC authority to completely preempt state law is a reasonable construction.

Thus, even though the language of the Act and its legislative history are silent as to whether Congress intended to completely preempt state law, the FCIC's interpretation of the Act does reasonably interpret the Act as completely preempting state law. *State ex rel. Todd v. United States*, 995 F.2d 1505, 1511 (10th Cir.1993) ("Even if Congress did not expressly provide for preemption of state law in private insurance contracts which are reinsured by the FCIC, the FCIC's decision to preempt state law in the reinsurance situation was eminently reasonable.").

### 3. Civil Enforcement Provision

The third and last part of the preemption test is whether the Act provides a civil en-forcement provision under which Owen can assert an action against Crop Hail Management. The court agrees with *Brown v. Crop Hail Management., Inc.*, 813 F.Supp. 519, 526 (S.D.Tex.1993), that the Act does so. The *Brown* court noted that 7 U.S.C. § 1508(f) together with 7 C.F.R. § 400.176(b) "provide a cause of action that takes the place of the Plaintiff's state law claims and adequately protects the interest at the heart of these claims." *Id.* at 526. The relevant portions of both 7 U.S.C. § 1508(f) and 7 C.F.R. § 400.167(b) are set out in the margin.[4] While unlike the *Brown* court, this court does not decide whether federal courts have exclusive jurisdiction to hear all claims under the Act, the court agrees that the Act does specify the jurisdiction, venue and damages for most cases. This is sufficient to meet the last prong of the complete preemption test.

### III. Conclusion

The Act completely preempts state law. Given the history and purpose of the Act, the congressional intent and the provision for civil enforcement, the Act so extensively regulates federal crop insurance that it does not leave any room for state law to supplement it thus, Crop Hail Management's removal of the case from state court was proper. It is therefore

ORDERED that this Order amends the court's August 11, 1992 Order. It is further

ORDERED that plaintiff Owen's Motion to Remand is DENIED. It is further

ORDERED that both parties shall brief the court by January 31, 1994, as to what

---

**4.** Section 1508(f) of Title 7, United States Code, provides in part:

> In the event that any claim for indemnity under the provisions of this chapter is denied by the Corporation, an action on such claim may be brought against the Corporation in the United States district court for the district in which the insured farm is located: *Provided,* That no suit on such claim may be allowed under this section unless it shall have been brought within one year after the date when notice of denial

of the claim is mailed and received by the claimant.

Section 400.176(b) of Title 7, Code of Federal Regulations, provides in part:

> No policy of insurance reinsured by the Corporation and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of damages against the Company issuing such policy, other than damages to which the Corporation would be liable under federal law if the Corporation had

damages the court may award in the event defendant is liable for any wrongdoing.[5]

issued the policy of insurance under its direct writing program....

5. In making its determination, the court reviewed the briefs filed on the motion to remand. Sadly, the court finds itself compelled to remind the attorneys of their obligations as officers of the court. Plaintiff provided the court with absolutely no authority for its position that the court should remand other than the bald assertion that the "suit is a matter of contract law concerning recovery under an insurance policy between Plaintiff and Defendant and not an action arising

under the Constitution.... Therefore, this Court does not have original jurisdiction pursuant to 28 U.S.C. § 1332 and this case is inappropriate for removal and should be remanded." Nowhere does plaintiff address the preemption issue. Defendant also provides the court will little help. Defendant does address the preemption issue, but its cursory review is of little help given the novelty of this issue.